UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-474-F

| | |
|---|---|
| RENEE JOHNSON,       ) | |
|      Plaintiff,    ) | |
|       ) | |
| v.     ) | O R D E R |
|       ) | |
| BROCK & SCOTT, PLLC,    ) | |
| CHANNEL GROUP, LLC, AND    ) | |
| COMPREHENSIVE LEGAL    ) | |
| SOLUTIONS, INC.,    ) | |
|      Defendants.    ) | |

This matter is before the court on Defendants' Notice of Default [DE-14], Motion to

Disqualify Counsel [DE-30], Motion for Partial Judgment Upon the Pleadings [DE-38], and

Plaintiff's Motion to Dismiss Defendant's Counterclaim Pursuant to Rule 12(b)(6) [DE-17, DE-

33]. These motions have been fully briefed and are ripe for ruling.

## I. PROCEDURAL AND FACTUAL HISTORY

Plaintiff Renee Johnson filed a complaint against Defendants Brock & Scott and Channel

Group in this court on September 9, 2011, alleging claims for violations of the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the North Carolina Debt

Collection Practices Act ("NCDCPA"), N.C. Gen. Stat. § 75-50 *et seq.* Plaintiff added

Comprehensive Legal Solutions as a Defendant on November 8, 2011. In the complaint, Plaintiff

states that she defaulted on a monetary obligation to Chase Bank. Chase Bank then sold the

obligation to the Defendant Channel Group, LLC on an unspecified date. On September 1, 2009,

Defendants Brock & Scott, on behalf of the Channel Group, filed an action in North Carolina state court to collect the debt. Although the parties dispute whether Plaintiff was properly served with notice of the action, Plaintiff notes in the Amended Complaint that judgment was entered against her in the state court action. Amend. Compl. [DE-12] ¶¶ 38-41. On October 23, 2009, Channel Group assigned their collection rights to Defendant Comprehensive Legal Solutions, Inc.

Plaintiff alleges that she first learned of the judgment against her when she obtained her credit report on January 5, 2011. Plaintiff attempted to call Defendant Channel Group to arrange a payment schedule and Channel Group instructed her to contact Defendant Brock & Scott.[1] Plaintiff called Brock & Scott on January 27, 2011 to inquire about the judgment and allegedly provided her full name, Amanda R. Johnson, her correct social security number, and the correct state court case number. Plaintiff alleges that Brock & Scott incorrectly informed her that no state court judgment had been entered against her. Plaintiff further alleges that Brock & Scott advised Plaintiff that she did not owe a debt to any of the Defendants and that the credit report entry was possibly a mistake. In addition, Defendant Brock & Scott sent a letter on behalf of itself and Defendant Channel Group dated January 27, 2011, which stated in relevant part "Our records indicate that we do not have a Judgment filed for Amanda R. Johnson, last 4 of SSN# [redacted] for our client with Docket #2009-CVD-01-7475." Amend. Compl. [DE-12] ¶ 47. Defendants allege that the judgment was filed using the Plaintiff's middle name, Renee Johnson, and that the they correctly reported that no judgment had been filed as to Amanda R. Johnson.

---

[1] Brock & Scott, PLLC is both a named defendant in the instant action and serves as counsel for all Defendants.

Plaintiff provided the letter from Brock & Scott to the three major credit bureaus, and the credit bureaus temporarily removed the entry from her credit report. On or about February 27, 2011, Plaintiff discovered the credit entry had been "verified" and that the credit bureaus reentered the unpaid debt on her credit report. Plaintiff then obtained counsel. On April 6, 2011, Brock & Scott allegedly sent an email to Plaintiff's attorney offering to "clear the judgment" from Plaintiff's credit report in exchange for a "suitable settlement."

Based on the foregoing, Plaintiff filed her complaint, alleging unfair and deceptive collection practices on the part of Defendants. Defendants filed counterclaims seeking a declaratory judgment that the Plaintiff acted in bad faith in prosecuting this lawsuit and attorneys fees under both 15 U.S.C. § 1692k(a)(3) and N.C. Gen. Stat. § 75-16.1(2).

Defendants have filed a number of motions that are now ripe for ruling. On November 11, 2011, the Defendants filed a Notice of Default on Defendants' counterclaims because the Plaintiff did not file a timely response to the counterclaims. Plaintiff filed a response opposing entry of default and filed an (untimely) motion to dismiss the counterclaims. Defendants also move to disqualify counsel and for partial judgment on the pleadings and Plaintiff has timely replied to these motions.

## II. DEFENDANTS' NOTICE OF DEFAULT

Defendants have submitted a Notice of Default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure based on Plaintiff's failure to timely respond to Defendants' counterclaim. Plaintiff argues in response that (1) an adequate response to the counterclaim was provided in the Amended Complaint [DE-12], or alternatively (2) that a notice of default is not the appropriate sanction for a failure to file a timely response.

3

## A. Standard of Review

Rule 55(a) of the Federal Rules of Civil Procedure provides: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). When a party seeks to set aside an entry of default, the party must satisfy Rule 55(c)'s "good cause" standard. Fed. R. Civ. P. 55(c) ("For good cause shown, the court may set aside an entry of default . . . ."). Conversely, if a default judgment has been entered, the party must meet the "excusable neglect" standard of Rule 60(b). Fed. R. Civ. P. 60(b) ("On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . excusable neglect . . . ."). Because setting aside a default judgment implicates policy concerns regarding finality of judgments, the Fourth Circuit has held that a motion under Rule 55(c)'s good cause standard is "more forgiving" than the Rule 60(b) excusable neglect standard. *Colleton Preparatory Acad., Inc. v. Hoover Universal*, 616 F.3d 413, 420 (4th Cir. 2010). Moreover, the Fourth Circuit has made clear that "the clear policy of the [Federal] [R]ules [of Civil Procedure] is to encourage the disposition of claims on their merits, although this policy must be balanced against the interest in preventing the judicial system from becoming overburdened by frivolous cases." *United States v. Moradi*, 673 F.2d 725, 727-28 (4th Cir. 1982) (citing *Reizakis v. Loy*, 490 F.2d 1132, 1135 (4th Cir. 1974)).

## B. Discussion

As discussed above, Defendants allege that the court should enter default against the Plaintiff for her failure to timely respond to Defendants' counterclaims. Plaintiff has filed a response opposing the entry of default, which this court will treat as a Rule 55(c) motion to set

4

aside entry of default. *See Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981) (explaining that "opposition to a motion for a default judgment can be treated as a motion to set aside the entry of a default despite the absence of a formal Rule 55(c) motion").[2] In deciding to set aside an entry of default, the Fourth Circuit has held that "the district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006); *Moradi*, 673 F.2d at 727-28. The court will consider each of these factors in turn.

### 1. Meritorious defense

Defendants have filed counterclaims seeking a declaratory judgment that Plaintiff acted in bad faith and for the purpose of harassment in initiating this suit, that Plaintiff's complaint was filed and prosecuted both frivolously and maliciously, and for attorneys' fees. Answer and Counterclaim [DE-22] ¶¶ 131-36.

As to the counterclaim for attorneys fees, Plaintiff has a meritorious defense. Defendants allege counterclaims under the FDCPA and the NCDCPA, both of which allow awards for defendants' attorneys fees in cases where defendants show that the plaintiff either proceeded in

---

[2] Technically, as the *Meehan* court explained, the clerk should automatically enter a default when a party "fails to plead or otherwise defend" a claim against her. Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, *the clerk shall enter the party's default*." (emphasis added)). Here, Plaintiff opposed the entry of default before the clerk actually entered the default on the docket, and the clerk correctly interpreted Plaintiff's opposition to the Notice of Default as a motion to set aside entry of default and submitted it to the undersigned. To preserve the record, the court DIRECTS the clerk to enter default against Plaintiff on Defendant's counterclaims and to treat Plaintiff "Response to Defendant's Notice of Default" [DE-18] as a Rule 55(c) motion to set aside entry of default.

5

bad faith or prosecuted the case maliciously and frivolously. 15 U.S.C. § 1692k(a)(3); N.C. Gen. Stat. § 75-16.1(2). Plaintiff has presented the court with numerous cases in which such counterclaims have been dismissed for failure to state a claim upon which relief can be granted. These courts have held that awards for attorneys' fees do not constitute a separate cause of action under the FDCPA and thus may not appropriately be brought via counterclaim. *See, e.g., Hardin v. Folger*, 704 F. Supp. 355, 356-57 (W.D.N.Y. 1988); *Kropf v. TCA, Inc.*, 752 F. Supp. 2d 797, 800-01 (E.D. Mich 2010); *Mirfendereski v. Rakestraw*, No. 2:10-CV-306, 2011 WL 3584325, at *3 (S.D. Ohio Aug. 15, 2011). Courts that have dismissed counterclaims for attorneys fees have allowed the prevailing party to bring a motion for attorney's fees at the close of the proceedings. *See, e.g., Kirscher v. Messerli & Kramer, PA*, No. 05-1901, 2006 WL 145162, at *7 (D. Minn. Jan. 18, 2007) (dismissing the section 1692k(a)(3) counterclaim for attorneys fees but permitting the defendants to file a motion for attorneys' fees at a later stage of the proceedings). Thus, Plaintiff has a meritorious defense as to Defendants' counterclaim for attorneys' fees.

As to both declaratory judgment counterclaims, the court finds that Plaintiff has a meritorious defense. Declaratory judgments may be dismissed where a party seeks a coercive judgment on the exact same legal issue that is presented in the declaratory judgment action. *In re Orion Pictures Corp*, 4 F.3d 1095, 1100 (2d Cir 1993). In *Orion*, the Second Circuit reviewed a bankruptcy judgment in which the debtor sought damages under a contract and a declaratory judgment regarding the debtor's rights under the contract. *Id.* at 1097. The *Orion* court explained that "[w]here a district court has before it a declaratory judgment action and a direct action containing all of the issues in the declaratory judgment action and decides the common

6

issues in the direct action, it may exercise its discretion to dismiss the declaratory judgment complaint." *Id.* at 1100.

Here, Defendants' declaratory judgment counterclaims ask the court to declare (1) whether the Plaintiff acted in bad faith or for the purpose of harassment and (2) whether Plaintiff's Amended Complaint was filed and prosecuted both frivolously and maliciously. These are the exact factual findings the court must make to determine whether attorneys' fees are appropriate under the FDCPA and the NCDCPA. 15 U.S.C. § 1692k(a)(3) ("[O]n a finding by the court that an action under this section was brought in bad faith or for the purpose of harassment, the court may award to the defendant attorney's fees . . . and costs."); N.C. Gen. Stat. § 75-16.1(2) ("[T]he presiding judge may . . . allow a reasonable attorney fee . . . upon a finding by the presiding judge that: . . . the party instituting the action knew, or should have known, the action was frivolous and malicious."). Defendants, by virtue of alleging counterclaims seeking attorneys fees, have made clear that they intend to seek attorneys fees in the present action. Answer and Counterclaim ¶¶ 135-36. The court therefore has discretion to dismiss both of the declaratory judgment counterclaims because the counterclaims ask the court to decide the same legal issues the court will rule on when Defendants pursue attorneys' fees. Thus, Plaintiff has a meritorious defense to both declaratory judgment actions because Plaintiff may move to dismiss the counterclaims on this basis.

### 2. Reasonable promptness

Plaintiff failed to answer Defendants' counterclaim within the twenty-four-day time limit required under Rules 6 and 12 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(a); Fed. R. Civ. P. 6(d) (allowing for a three-day extension of Rule 12(a)'s twenty-one day time limit

7

where a party serves a motion by electronic transmission). Defendants filed a Notice of Default on November 11, 2011 [DE-14], the last day Plaintiff had to respond to the counterclaim.[3] Plaintiff filed a Motion to Dismiss [the] Counterclaim [DE-17] and a Response to Defendant's Notice of Default [DE-18] on November 25, 2011. Thus, Plaintiff responded to the Notice of Default two weeks after it was entered on the court's docket with both a motion to dismiss and a response in opposition to the entry of default. The court, mindful that Plaintiff's burden is more forgiving under a Rule 55(c) motion to set aside default, finds that Plaintiff's responses within two weeks of the notice of default constitute "reasonable promptness" under *Payne*. *Payne*, 439 F.3d at 204-05; *see also Armor v. Michelin Tire Corp.*, No. 96-1724, 1997 WL 245217, at *2 (4th Cir. May 13, 1997) ("Michelin acted promptly when it was apprised of the default, filing its motion for leave to file an answer and affirmative defenses eleven days after it received notice from the clerk's office.").

### 3. The personal responsibility of the defaulting party

The court also finds that the Plaintiff herself is not personally responsible for the default. Plaintiff's attorneys failed to respond to the counterclaim within the required time frame and the record does not suggest that the Plaintiff actually contributed in some way to this delay. *Moradi*, 673 F.2d at 728 (explaining in the context of a motion to set aside entry of default, "[j]ustice

---

[3] Defendants acted prematurely in submitting the Notice of Default. Under the Federal Rules of Civil Procedure, the day a party files the counterclaim is not counted for purposes of calculating the relevant time limits. Fed. R. Civ. P. 6(a)(1)(A) ("exclude the day of the event that triggers the period"). Thus, Defendants filed the Notice of Default one day early because Plaintiff could have timely responded to the counterclaim on November 11, 2011. However, the court will consider the motion because Plaintiff did not respond to the counterclaim until November 25, 2011.

demands that a blameless party not be disadvantaged by the errors or neglect of his attorney, which cause a final, involuntary termination of the proceeding").

### 4. The prejudice to the party

The court also finds that setting aside the default will not unduly prejudice the Defendants. As to the counterclaim for attorneys' fees, setting aside the entry of default would only unduly prejudice the Defendants if the court would have awarded attorneys' fees on a motion for a default judgment. However, the court is not in a position to award attorneys' fees pursuant to a default judgment where the Plaintiff has, other than the failure to timely respond to the counterclaim, fully participated in litigating the claim. For example, Plaintiff filed her Amended Complaint on November 11, 2008, the day the response to the counterclaim was due,[4] which indicates that Plaintiff had in no way abandoned the lawsuit. The only scenario in which Defendants would be entitled to an award of attorneys' fees at this stage of the proceedings—before any discovery has been completed or any party has been heard on the issue of whether Plaintiff filed this lawsuit in bad faith—is if Plaintiff had entirely abandoned the case. Because Plaintiff has continued to pursue the case and her only "default" has been a failure to timely respond to the counterclaim, the court would not award Defendants attorneys' fees at this stage of the proceedings. Thus, setting aside the default as to the counterclaim for attorneys' fees will not unduly prejudice Defendants.

Similarly, setting aside the entry of default will not unduly prejudice Defendants as to their declaratory judgment counterclaims. The declaratory judgment counterclaims relate to

---

[4] Plaintiff argues that her Amended Complaint should serve as a responsive pleading to the counterclaim. However, Rule 12 requires a party to respond to a counterclaim with either an answer or a Rule 12(b) motion to dismiss. Fed. R. Civ. P. 12. Additionally, Plaintiff's Amended Complaint fails to refer in any way to Defendant's counterclaim.

9

whether Plaintiff filed this lawsuit in bad faith or frivolously. Setting aside the default entry as to these counterclaims does not prevent Defendants from presenting evidence to the court regarding Plaintiff's alleged bad faith at the appropriate time. Defendants have presented no argument to the court indicating that, relying on the entry of default, evidence of Plaintiff's bad faith has been destroyed. Thus, the court finds that Defendants are not unduly prejudiced by setting aside the entry of default as to the declaratory judgment counterclaims.

### 5. History of dilatory action by Plaintiff

The court also finds no history of dilatory action by Plaintiff in prosecuting this lawsuit. Plaintiff has not missed any other filing deadlines, has not continuously asked for extensions of time in an attempt to prolong the litigation, and each of Plaintiff's motions have been filed with lengthy arguments supported by case law.

### 6. Availability of sanctions less drastic

Neither party has suggested alternative sanctions, though sanctions less drastic than entry of default are available to address Plaintiff's failure to respond. *See Pinpoint IT Servs., L.L.C. v. Atlas IT Export Corp.*, 812 F. Supp. 2d 710, 727-28 (E.D. Va. 2011). The court will consider alternative sanctions if brought before the court in a properly supported motion.

Because Plaintiff has satisfied the relevant *Payne* factors for setting aside an entry of default, Plaintiff's opposition to entry of default, which as discussed the court treats as a rule 55(c) motion to set aside the entry of default, is ALLOWED. As discussed, the clerk is DIRECTED to enter default against Plaintiff in response to Defendants' Notice of Default [DE-14]. But the entry of default will be set aside because the court will allow Plaintiff's Rule 55(c) motion [DE-18].

10

## III. PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

Plaintiff has also filed a Motion to Dismiss Defendants' Counterclaim [DE-17, DE-33] under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff argues that the sections of the FDCPA and the NCDCPA that award attorneys' fees, 15 U.S.C. § 1692k(a)(3), N.C. Gen. Stat. § 75-16.1(2), do not provide a separate cause of action awarding attorneys' fees and thus an action for attorneys' fees may not be appropriately brought as a counterclaim. Defendants oppose the motion on the grounds that they seek a declaratory judgment that Plaintiff has pursued this lawsuit in bad faith and for the purpose of harassment, which would entitle them to attorneys' fees.

### A. Standard of Review

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint or counterclaim and not to resolve factual disputes between the parties. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). The court must examine whether the pleading satisfies Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In ruling on a motion to dismiss, the court will assume all facts alleged in the pleading are true. *Id.* at 94. However, the " 'factual allegations [in the pleading] must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.' " *Washi v. Charleston Area Md. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). "[A] plaintiff's

11

obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

## B. Discussion

As the court has noted, Defendants allege three counterclaims: (1) a declaratory judgment that Plaintiff acted in bad faith and for the purpose of harassment in initiating this suit, (2) a declaratory judgment that Plaintiff's complaint was filed and prosecuted both frivolously and maliciously, and (3) a claim for attorneys' fees. Answer and Counterclaim [DE-22] ¶¶ 131-36. The court will consider the claim for attorneys' fees first.

The court has been unable to locate any cases from the United States Courts of Appeals that address whether a separate cause of action for attorneys' fees exists under 15 U.S.C. § 1692k(a)(3). However, a number of district courts have held that no such cause of action exists. In general, these courts reason that the plain language of § 1692k(a)(3) permits only "relief" to a prevailing party in the form of attorneys' fees and not a separate cause of action. *See, e.g.*, *Hardin v. Folger*, 704 F. Supp. 355, 56-57 (W.D.N.Y 1988) ("section 1692k(a)(3) provides relief, but not a claim to defendants"); *Allers-Perus v. Columbia Recovery Grp., LLC*, No. C08-5533-FDB, 2009 WL 1160061, at *1 (W.D. Wash. Apr. 29, 2009) ("if a plaintiff brings an FDCPA action *and loses*, subsection 1692k(a)(3) permits the court to award attorney's fees and costs to the defendant"); *Rodriguez v. Portfolio Recovery Assocs.*, 841 F. Supp. 2d 1208, 1210-12 (W.D. Wash. 2012) (citing numerous cases that hold section 1692k(a)(3) does not provide a separate cause of action).

The court agrees with this reasoning. Because section 1692k(a)(3) provides relief to a

defendant only if that defendant prevails, Defendants here may not pursue a counterclaim for relief that they are not currently entitled to. Thus, as to the claim for attorneys fees, the Motion to Dismiss is ALLOWED.

The Defendants also allege counterclaims for declaratory judgments regarding whether Plaintiff acted in bad faith and for the purpose of harassment, and whether Plaintiff filed the complaint both frivolously and maliciously. For the reasons set forth more fully in Section II.B.1, the court also ALLOWS the motion to dismiss these counterclaims as well.

As discussed in Section II.B.1, district courts have discretion to dismiss a declaratory judgment action when the party seeking the declaratory judgment also seeks a coercive judgment on the exact same legal issue. *See* Section II.B.1; *see also Orion*, 4 F.3d at 1100 (dismissing declaratory judgment action where the legal issue would be resolved in the coercive proceeding). Here, Defendants have made clear that they intend to make a motion for attorneys' fees, as evidenced by the fact that they have already counterclaimed for them. Because the issues the Defendants seek declaratory judgments on—namely, whether Plaintiff acted in bad faith in prosecuting this lawsuit—will be decided if and when Defendants move for attorneys fees, the court ALLOWS the motion to dismiss the counterclaims at this stage.[5]

In sum, the court ALLOWS Plaintiff's motion to dismiss the counterclaims. Of course, if Defendants are the prevailing party in this lawsuit, they are free to make a motion at the close of these proceedings for attorneys' fees under section 1692k(a)(3). *See Kirscher*, 2006 WL 145162,

---

[5] The court notes here that Section 1692k(a)(3) only allows the prevailing party to move for attorneys' fees. Thus, Defendants may not have an opportunity to litigate their bad faith declaratory judgment counterclaims if they do not prevail in the lawsuit. However, if Plaintiff prevails in the lawsuit then it would be impossible for the court to find that Plaintiff filed this lawsuit in bad faith or for the purpose of harassment.

13

at *7 (dismissing the section 1692k(a)(3) counterclaim for attorneys fees but permitting the defendants to file a motion for attorneys' fees at a later stage of the proceedings). At that point, the court will decide whether Plaintiff has acted in bad faith and for the purpose of harassing Defendants.

## III. MOTION TO DISQUALIFY COUNSEL

Defendants also move to disqualify counsel on two grounds: (1) a concurrent conflict of interest; and (2) inadequate case supervision by local counsel. After explaining the general standard of review for motions to disqualify counsel, the court will address the alleged concurrent conflict of interest first, and then the alleged inadequate supervision by local counsel.

### A. Standard of Review for Disqualifying Counsel

The Fourth Circuit has explained that counsel should not be automatically disqualified for violations of the rules of professional responsibility and instead district courts should focus, case by case, on the potential harm to the parties before the court. *See Schaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992); *Aetna Casualty & Surety Co. v. United States*, 570 F.2d 1197, 1202 (4th Cir. 1978); *Gaumer v. McDaniel*, 811 F. Supp. 1113, 1117 (D. MD. 1991). In addition, disqualification "cannot be based on imagined scenarios of conflict, and the moving party has a high standard of proof to meet in order to prove that counsel should be disqualified." *Plant Genetic Sys., N.V. v. Ciba Seeds*, 933 F. Supp. 2d 616, 621 (W.D.N.C. 2001) (citing *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 729 (E.D. Va. 1990)). However, in close cases, "all doubts should be resolved in favor of disqualification." *Ciba Seeds*, 933 F. Supp 2d at 517 (citing *Rogers v. Pittston Co.*, 800 F. Supp. 350, 353 (W.D. Va. 1992). District courts must balance three factors when considering a motion to disqualify: (1) a party's right to his

14

choice of counsel and (2) the potential substantial hardship resulting from disqualification against

(3) the importance of safeguarding the public trust in the judicial system. *Id.* at 517;

*Capacchione v. Charlotte-Mecklenburg Bd. of Educ.*, 9 F. Supp. 2d 572, 579 (W.D.N.C. 1998).

**B. Discussion**

### 1. Motion to Disqualify Counsel Based on Concurrent Conflict of Interest.

Defendants first argue that Plaintiff's counsel should be disqualified because she also

represents one of the Defendants, Comprehensive Legal Solutions ("CLS"). Plaintiff's counsel,

Ms. Holly E. Dowd, has been representing Plaintiff since at least March 25, 2011, when she

mailed a letter to Defendants Brock & Scott notifying them of her representation of Plaintiff and

discussing possible settlement matters. Exhibit 1, March 25, 2011 Demand Letter [DE-30-2].

On behalf of Plaintiff, Ms. Dowd filed the complaint in this matter on September 13, 2011,

naming Brock & Scott and Channel Group as defendants. On September 20, 2011, Defendant

Brock & Scott, acting as counsel for Defendant CLS, offered a public contract for an attorney to

make a limited appearance on behalf of CLS. The contract called for a South Carolina attorney

to make an appearance in South Carolina state court on behalf of CLS to request a continuance in

an unrelated debt collections case. Ms. Dowd accepted the contract and appeared in court on

behalf of CLS on September 28, 2011. CLS was not added as a defendant in the instant litigation

until November 8, 2011, when Plaintiff filed her Amended Complaint.

Defendants move to disqualify counsel pursuant to Rule 1.7 of the North Carolina

Revised Rules of Professional Conduct ("RPC"). This court has adopted the North Carolina

Revised Rules of Professional Conduct and associated comments as the "ethical standard

15

governing the practice of law in this court." Local Civil Rule 83.1(j) EDNC. Rule 1.7 states, in relevant part:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client, or
>
> (2) the representation of one or more clients may be materially limited by the lawyer's responsibilities to another client, a former client, or a third person, or by a personal interest of the lawyer.

N.C. R. Prof'l Conduct 1.7(a). In addition, Comment 6 defines the phrase "directly adverse" as follows: "a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated." *Id.* at cmt. 6.

Because it is unclear from the Defendants' motion to disqualify whether they assert a conflict based on 1.7(a)(1) or 1.7(a)(2), the court will analyze Ms. Dowd's representation under both provisions. The court takes up 1.7(a)(1) first. Here, it is true that Ms. Dowd represented the Plaintiff in the instant litigation at the same time that she represented Defendant CLS in the unrelated debt collections matter. To the extent Defendants argue that this is a concurrent conflict of interest based on 1.7(a)(1), however, their argument fails.

Rule 1.7(a)(1) prohibits "direct adversity" and the comment to rule 1.7(a)(1) further explains that direct adversity occurs when "a lawyer [acts] as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated." Here, Ms. Dowd did not represent CLS until she accepted the open contract to make the appearance requesting a continuance on or about September 20, 2011.[6] The Amended Complaint

---

[6] The court notes that the parties' motions do not specify the precise date that Ms. Dowd accepted the contract to represent CLS. However, Ms. Dowd must have accepted the contract

16

adding CLS as a defendant was filed November 8, 2011. Therefore, the only way in which Ms. Dowd could have "acted as an advocate in one matter against a person the lawyer represents in some other matter" is if Ms. Dowd continued to represent CLS on November 8, 2011, when Plaintiff filed the Amended Complaint naming CLS as a defendant.

Plaintiff argues that Ms. Dowd's appearance on behalf of CLS on September 28, 2011 was nothing more than the performance of a contract requiring a single appearance in court. Plaintiff points the court to Defendants' "Memorandum of Law in Support of Motion to Disqualify Counsel," [DE-28], which describes the contract as "a public contract for an attorney to make a limited appearance . . . for the purpose of requesting a continuance in a debt collection case." Plaintiff then notes that Ms. Dowd had no further contact with Defendant CLS in any professional capacity after the September 28, 2011 hearing, and alleges that both parties understood that her representation of CLS ended after the court appearance. Defendants do not dispute this allegation.

The court agrees with the reasoning in *Wal-Mart Stores, Inc. v. Vidalakis*, No. 07-0039, 2007 WL 4468688 (W.D. Ark. Dec. 17, 2007), in which the District Court for the Western District of Arkansas stated "[f]or the purposes of a disqualification analysis, a client should be considered an "existing client" of the attorney if there was an *ongoing attorney-client relationship* at the time the complaint was filed [against the existing client]." *Id.* at *3 (emphasis added). No evidence has been presented to the court that at the time Ms. Dowd filed the

---

between September 20, 2011, when Brock & Scott offered the contract and September 28, 2011, when Ms. Dowd appeared in court on behalf of CLS.

complaint against CLS on November 8, 2011, she continued to represent CLS in any capacity. Therefore, no conflict exists under Rule 1.7(a)(1).[7]

The court now moves to rule. 1.7(a)(2), which states that a "concurrent conflict of interest exists if . . . the representation of one or more clients may be materially limited by the lawyer's responsibilities to another client, a former client, or a third person, or by a personal interest of the lawyer." N.C. R. Prof'l Conduct 1.7(a)(2). Comment 8 to rule 1.7 further defines material limitation as "material[] interference with the lawyer's independent professional judgment in considering alternatives or [the lawyer's responsibilities or personal interest] foreclose courses of action that reasonably should be pursued on behalf of the client." *Id.* at cmt. 8.

Here, Defendants have provided no evidence or argument to the court regarding how Ms. Dowd's (past) representation of CLS may have been materially limited by her representation of Plaintiff, or how Ms. Dowd's representation of Plaintiff may be materially limited by her representation of CLS. The court has reviewed all of Defendants' exhibits presented in support of the motion to disqualify counsel and the "Memorandum of Law in Support of Motion to Disqualify Counsel" [DE-30-1]. These documents provide no evidence or discussion of how rule 1.7(a)(2) applies in this case. Thus, Defendants have failed to meet their burden of proof with respect to Rule 1.7(a)(2). *See Ciba Seeds*, 933 F. Supp. 2d at 621 (explaining "the moving party has a high standard of proof to meet in order to prove that counsel should be disqualified").[8]

---

[7] Defendants also seem to argue that because Ms. Dowd represented CLS at the same time she represented Plaintiff, she has violated rule 1.7(a)(1). Rule 1.7(a)(1) does not prohibit simultaneous representation of two clients who later become adverse, so long as the lawyer does not represent them both while they are adverse. As noted above, Plaintiff and CLS did not become adverse until November 8, 2011, well after Ms. Dowd's representation of CLS ended.

[8] The court also notes here that there is no evidence that a conflict of interest exists under Rule 1.9, Duties to Former Clients. N.C. R. Prof'l Conduct 1.9. While Defendants did not raise this

18

**2. Motion to Disqualify based on Rule 5.5—Inadequate Supervision by Local Counsel**

Defendants next argue that Ms. Dowd should be disqualified pursuant Local Civil Rule 83.1(d) and Rule 5.5 of the North Carolina Revised Rules of Professional Conduct, which require participation of local counsel when parties represented by out of state counsel appear before this court. Local Civil Rule 83.1(d), EDNC; N.C. R. Prof'l Conduct 5.5(c)(2)(D). Local Civil Rule 83.1(d) states, in relevant part: "Litigants in civil actions . . . must be represented by at least one member of the bar of this court who shall sign all documents filed in this court . . ." Local Civil Rule 83.1(d), EDNC. Rule 5.5(c)(2)(D) of the North Carolina Rules of Professional Conduct[9] further states that "a lawyer admitted to practice in another jurisdiction, but not in this jurisdiction, does not engage in the unauthorized practice of law in this jurisdiction if . . . the

---

rule in their Memorandum of Law, Plaintiffs correctly point out that the proper rule to analyze the potential conflict between Ms. Dowd and CLS is rule 1.9. Rule 1.9 states, in relevant part: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client . . . ." *Id.* Comment 3 to Rule 1.9 further explains that "matters are 'substantially related' . . . if there otherwise is a substantial risk that information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." *Id.* at cmt. 3. Because the matter Ms. Dowd represented CLS regarding involved a different debt owed to CLS by a person wholly unrelated to the Plaintiff in the instant action, the court concludes that there is no significant risk that information obtained during Ms. Dowd's representation of CLS would materially advance Plaintiff's current case. The most Ms. Dowd could have learned about CLS during the former representation is general information regarding CLS's debt collections procedures. Comment 3 to Rule 1.9 specifically excludes this type of information from creating a Rule 1.9 conflict: "general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation." *Id.* at cmt. 3. The court therefore concludes that no Rule 1.9 conflict is present on these facts.

[9] As discussed above, this court has adopted the North Carolina Rules of Professional Conduct as the ethical standards governing the practice of law in this court. Local Civil Rule 83.1(j), EDNC.

lawyer is associated in the matter with a lawyer admitted to practice in this jurisdiction who actively participates in the representation." N.C. R. Prof'l Conduct 5.5(c)(2)(D). Additionally, comment 7 to Rule 5.5 states, in relevant part: "[t]he lawyer admitted to practice in this jurisdiction, however, may not serve merely as a conduit for an out-of-state lawyer but must activity participate in and share actual responsibility for the representation of a client." *Id.* at cmt. 7.

In addition to these general principles, a number of courts have taken up the issue of the proper role for local counsel. Some courts have held that local counsel may take a more limited role in the case and allow the lead out-of-state attorneys to assume primary responsibility. *See, e.g.*, *Macawber Eng'g, Inc. v. Robson & Miller*, 47 F.3d 253, 257 (8th Cir. 1995) ("local counsel does not automatically incur a duty of care with regard to the entire litigation"); *Ortiz v. Barrett*, 278 S.E.2d 833, 838 (Va. 1981) (allowing local counsel to limit his role to work lead counsel delegated to him). An alternative line of cases requires that local counsel fully participate in the case and supervise the out-of-state attorneys. *See, e.g.*, *Gould, Inc. v. Mitsui Mining & Smelting Co.*, 738 F. Supp. 1121, 1125 (N.D. Ohio 1990) ("The trend is, properly, away from the view that some counsel have only limited responsibility and represent a client in court in a limited capacity, or that the local counsel is somewhat less the attorney for the client than is lead counsel . . . The Federal Rules of Civil Procedure and the Local Rules for the Northern District of Ohio do not recognize any lawyers as less than full advocates for their clients."); *Ingemi v. Pelino & Lentz*, 866 F. Supp. 156, 162 (D.N.J. 1994) ("Local counsel must also supervise the conduct of *pro hac vice* attorneys and must appear before the court in all proceedings."); *Brown v. Philip Morris Inc.*, 291 F. Supp. 2d 3, 6 (D. Mass. 2003) (stating "the rule imposes a significant, ongoing

20

responsibility on a local counsel and should not be taken lightly"). The court has not found any decisions from the Fourth Circuit directly addressing this issue and the parties have not provided any.

Assuming, *arguendo*, that the stricter standard applies to local counsel in the Fourth Circuit, the evidence provided by Defendants does not warrant disqualification. Defendants allege that Ms. Dowd has been unresponsive to a number of emails and phone calls sent by Defendants. Defendants admit that members of Ms. Dowd's firm, one of whom is admitted *pro hace vice* in this case, responded to some of their emails and phone calls instead of Ms. Dowd. Defendants also allege that Ms. Dowd's signature was electronically fixed on two letters sent to Defendants and that Ms. Dowd did not personally write either letter or exercise any editorial control over the letters.[10] Finally, Defendants also allege that Ms. Dowd did not actively participate in the required Rule 26(f) conference call. Defendants admit that she was present during the conference call. Defendants also maintain that Ms. Dowd failed to respond to several requests to speak with her specifically about the case.

Assuming, without deciding, that Ms. Dowd has failed to return Defendants' emails and phone calls, the court cannot say that Ms. Dowd is not participating in the case or supervising the work of out-of-state counsel. While the stricter standard for local counsel does require active participation and supervision, Defendants seem to assume the standard requires exclusive participation. Where a plaintiff has retained a particular firm to undertake representation on her behalf, opposing counsel is not entitled to speak exclusively with only one of the attorneys working on the case. So long as some members of the firm promptly respond to emails or phone

---

[10] Ms. Dowd disputes this allegation. As discussed below, the court finds it unnecessary to resolve this factual dispute for purposes of ruling on this motion.

calls from Defendants, this court will not disqualify counsel because Defendants did not get to communicate with the particular lawyer within the firm they preferred to talk to, even if that lawyer is designated as local counsel. Whatever the proper role of local counsel might be, it does not give the opposing party exclusive rights to communicate only with local counsel as the case progresses. Because Defendants admit that attorneys from Ms. Dowd's firm responded to a number of their emails and phone calls, the fact that Ms. Dowd did not personally respond cannot serve as a basis for a violation of Rule 5.5(c) or disqualification.

Defendants also allege that Ms. Dowd did not exercise editorial control over two letters sent to Defendants and signed by Ms. Dowd, and that Ms. Dowd did not participate in the Rule 26(f) conference. The court notes that Ms. Dowd's affidavit [DE 34-1] indicates that she did compose and sign both letters. Assuming, without deciding, that Ms. Dowd did not write these letters and did not participate in the Rule 26(f) conference, she still may be communicating with the Plaintiff regarding the case, attending settlement discussions, and conferring with the out-of-state attorneys from her firm. Indeed, Defendants admit that she attended the Rule 26(f) conference.

Ms. Dowd's affidavit [DE 34-1] indicates that she has assumed primary responsibility for discussing case strategy with the Plaintiff and that she has fully participated in and takes primary responsibility for all litigation decisions made in the case. Defendants do not provide the court with evidence that contradicts these assertions. Defendants' allegations that she did not respond to emails from Defense counsel (though others from her firm did respond), that she did not personally compose two letters sent to Defendants, and that she did not actively participate

22

(though she did attend) the Rule 26(f) conference do not provide the court with sufficient

evidence to conclude that Ms. Dowd is not actively participating in the case.

Thus, Defendants have not met their burden of proof for their motion to disqualify

counsel pursuant to Rule 1.7 or Rule 5.5 of the North Carolina Revised Rules of Professional

Conduct. The Defendant's motion to disqualify counsel is therefore DENIED

## IV. DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Defendants also move for partial judgment on the pleadings. Specifically, Defendants

move for judgment on the pleadings as to Counts One, Three, Four, and the second and third

allegations of Count Five of the Amended Complaint. Mot. for Partial J. upon the Pleadings

[DE-38]. Defendants make essentially the same two arguments in their motion for judgment on

the pleadings as to Counts One, Three, and Four: that these counts are barred by the *Rooker-*

*Feldman* doctrine, *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of*

*Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and that alternatively the FDCPA

does not proscribe the conduct alleged in Counts One, Three, and Four. The court will therefore

address the motion as to Counts One, Three, and Four together. Defendants launch a similar

attack as to Count Five, but because that count involves a claim under the NCDCPA and a

somewhat different factual predicate, the court will address the motion as to Count Five

separately.

### A. Standard of Review

Rule 12(c) of the Federal Rules of Civil Procedure allows parties to move for judgment

on the pleadings. Fed. R. Civ. P. 12(c). The standard for resolving a Rule 12(c) motion is

similar to the standard for resolving a 12(b)(6) motion, with the exception that the court

considers the answer as well as the complaint. *Edwards*, 178 F.3d at 243 ("However, viewing the Defendants motion as a Rule 12(c) motion does not have a practical effect upon our review, because we review the district court's dismissal *de novo* and in doing so apply the standard for a Rule 12(b)(6) motion); *Continental Cleaning Serv. v. United Parcel Serv., Inc.*, No. 1:98CV1056, 1999 WL 1939249, at *1 (M.D.N.C. Apr. 13, 1999) ("[A] motion to dismiss under Rule 12(b)(6) and a motion for judgment on the pleadings under Rule 12(c) are considered under a similar standard, with the key difference being that on a 12(c) motion, the court is to consider the answer as well as the complaint.").

Thus, in a Rule 12(c) motion, the court tests the legal sufficiency of the pleadings and does not seek to resolve factual disputes between the parties. *Edwards*, 178 F.3d at 243-44. The court must examine whether the pleadings satisfy Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555). In ruling on a motion for judgment on the pleadings, the court will assume all facts alleged in the pleadings are true. *Id.* at 94. However, the " 'factual allegations [in the pleadings] must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.' " *Washi*, 562 F.3d at 616 n.26 (quoting *Twombly*, 550 U.S. at 555). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

**B. Discussion**

24

**1. Motion for Judgment on the Pleadings - Counts One, Three, and Four**.

As discussed, Defendants launch two primary attacks on Counts One, Three, and Four:
(1) that the allegations are barred by the *Rooker-Feldman* doctrine, and (2) that the conduct
alleged in the complaint is not proscribed by the FDCPA. Defendants' motion relates to two
alternative factual allegations in Plaintiff's Amended Complaint. Amend Compl. [DE-12]. In
paragraphs 56-58 of the Amended Complaint, Plaintiff alleges the following:

> (56) In an attempt to collect an alleged debt in default, Defendant B&S, itself and on
> behalf of Defendant CG and Defendant CLS, misrepresented the legal status of
> Plaintiff's alleged debt, including, but not limited to, when Defendants told Plaintiff
> on January 27, 2011, that there was no judgment against her and sending a letter to
> her stating the same.
>
> (57) Defendants' statement and correspondence stating that it did not hold a
> judgment against Plaintiff constitute a misrepresentation of the legal status of
> Plaintiff's alleged debt.
>
> (58) Alternatively, Defendants have misrepresented the character, amount, or legal
> status of Plaintiff's alleged debt by continuing to attempt to collect the debt despite
> there being no valid judgment entered against Plaintiff, as stated in their January 27,
> 2011 letter.

*Id.* ¶¶ 56-58. In sum, Plaintiff alleges that (1) Defendants incorrectly told Plaintiff over the
phone and by letter that no judgment had been entered against her, or (2) alternatively that
Defendants attempted to collect on an invalid state court judgment. These allegations form the
primary factual bases for Counts One, Three and Four. The Amended Complaint separates
Counts One, Three, and Four because the Plaintiff alleges that this conduct violates multiple
sections of the FDCPA. For purposes of clarity, the allegations will be referred to as "first
allegation" and "second allegation" in the discussion below.

Defendants argue that the Second allegation—the attempt to collect on an invalid state
court judgment—requires the court to the review the validity of a state court judgment, in

25

violation of the *Rooker-Feldman* doctrine. In *Rooker*, the United States Supreme Court held that a litigant who lost in state court could not seek review of the state court judgment in a federal district court. 263 U.S. at 415-16. In *Feldman*, the Court reaffirmed the basic rule laid down in *Rooker* and further concluded that federal district courts do not have subject matter jurisdiction over claims the state court did not directly decide, but that are "inextricably intertwined" with state court decision. 460 U.S. at 486-87; *see also Plyer v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997) (explaining the "inextricably intertwined" language from *Feldman*). The *Rooker* and *Feldman* courts both reasoned that 28 U.S.C. § 1257 lodges appellate jurisdiction over state court judgments exclusively in the United States Supreme Court. *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 283 (2005).

In *Exxon*, the Supreme Court significantly narrowed the scope of the *Rooker-Feldman* doctrine. Prior to *Exxon*, lower federal courts had interpreted *Rooker-Feldman* to mean that the loser in state court "was barred from bringing suit in federal court alleging the same claim or a claim that could have been brought in the state proceedings." *Davani v. Virginia Dept. of Transp.*, 434 F.3d 712, 713 (2006). In *Exxon*, the Supreme Court confined the *Rooker-Feldman* doctrine to "cases brought by state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon*, 544 U.S. at 284.

Here, Defendants' theory is that Plaintiff's Second allegation— that Defendants attempted to collect on an invalid state court judgment—is the exact type of case the *Exxon* Court described as barred by the *Rooker-Feldman* doctrine. Defendants maintain that for the court to conclude that Defendants violated the FDCPA by attempting to collect on an invalid state court

26

judgment, the court would have to review the state court judgment and conclude as a matter of law that the judgment was invalid.

Plaintiff apparently agrees that this court may not review the judgment entered against her in state court. In "Plaintiff's Response to Defendant's Motion for Partial Judgment on the Pleadings," Plaintiff states:

> In this case, Plaintiff's complaint does not seek relief from the state court's judgment, nor does Plaintiff claim any injury resulting from the court having entered any judgment. Rather, Plaintiff seeks recovery for an injury caused by the conduct of defendants—claims that would exist independently of any decision made by the state court. If there was a judgment entered, then Defendants' false representation that there was no judgment forms the basis of Plaintiff's claim. If there was no judgment entered, as B&S stated, then Defendants' continued collection efforts on a debt not owed form the basis of Plaintiff's claim. This court is not being requested to overturn any judgment, or grant any relief that would undo the judgment—it need merely find whether a judgment was entered.

Pl.'s Resp. to Def.'s Mot. for Partial J. on the Pleadings [DE-41] at 8. Under Plaintiff's interpretation of her own complaint, Plaintiff does not seek to overturn the state court judgment, but instead questions whether a state court judgment was entered as a factual matter. Thus, Defendants may submit evidence that a judgment was actually entered against the Plaintiff, and the court will only consider whether the judgment was entered against the Plaintiff as a factual matter. The court will not consider whether judgment was legally "valid." Because Plaintiff's interpretation of her own allegation dispenses with the need to consider whether the *Rooker-Feldman* applies, the court DENIES the motion for partial judgment on the pleadings as to Counts One, Three, and Four to the extent the motion is based on a *Rooker-Feldman* attack.[11]

---

[11] Of course, the *Rooker-Feldman* doctrine does not bar any of the Plaintiff's other claims, which allege that the debt collection procedures themselves violated the FDCPA. These claims exist independently of the validity of the state court judgment. *Moore v. Idealease of Wilmington*, 465 F. Supp. 2d 484, 490 (E.D.N.C. 2006).

27

The court now turns to Defendants' arguments as to the first factual allegation that forms the basis of Counts One, Three and Four. As described above, the alleged conduct involved telling the Plaintiff over the phone and by written letter that no judgment had been entered against her, when in fact a judgment had been entered against her. Defendants' primary argument[12] is that these communications were not "in connection with the collection of a debt," as required by the FDCPA.

In Counts One and Three, Plaintiff alleges that these communications violated sections 1692e(2)(A) and 1692e(10) of the FDCPA. Section 1692(e)(2)(A) reads, in relevant part:"A Debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt . . . the following conduct is a violation of this section: (2) The false representation of—(a) the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Section 1692e(10) uses the same introductory language, but proscribes "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §1692e(10). Thus, the statutory

---

[12] Defendants also allege that when Plaintiff called to inquire about the debt, she gave her full name, "Amanda R. Johnson," instead of the name the judgment was entered under, Renee Johnson. Defendants argue that the letter does not "misrepresent" the character or legal status of Plaintiff's debt because the letter and telephone conversation provided information as to Amanda R. Johnson, not Plaintiff Renee Johnson. Plaintiff counters that "Amanda R. Johnson" is the Plaintiff's full legal name, and that Plaintiff provided her correct social security number and the correct state court case number to Defendant Brock & Scott when she called. Also, the letter provided to Plaintiff stating no judgment had been entered against her lists the case number and the last four digits of her social security number correctly. The court is not in a position to say, as a matter of law, that Defendants's letter does not misrepresent the character, amount, or legal status of Plaintiff's debt on this basis. Taking Plaintiff's factual allegations as true, Plaintiff provided the correct social security number, last name, and case file number to Defendants and received a letter stating that she did not owe a debt to them. Under these facts, the fact-finder could find that Defendants misrepresented the status of Plaintiff's debt, in violation of the FDCPA.

28

provisions at issue in Counts One and Three require that the communication between the parties be "in connection with the collection of any debt."

Defendants rely on the plain meaning of the statutory language "in connection with the collection of any debt" and argue that a letter reporting that they held no judgment as to "Amanda R. Johnson" and a phone conversation relating the same cannot be "in connection with the collection of any debt." Defendants argue that a letter sent to a debtor that "neither demands payment from Plaintiff, nor describes any consequences of the failure so to do [sic] which will befall Plaintiff, nor refers to any debt at all" cannot be "in connection with the collection of a debt." Defs' Mem. of Law In Support of Mot. for Partial J. Upon the Plss. [DE-39] at 2. Defendants cite to no case law, and the court has not been able to find any, that supports the theory that a communication must be a collection attempt or refer to the specific debt owed to be "in connection with" the collection of a debt.

Plaintiff, conversely, cites to a number of cases holding that a communication does not have to be an outright collection attempt to be "in connection with the collection of a debt." For example, in *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380 (7th Cir. 2010), the Seventh Circuit held: "The absence of a demand for payment is just one of several factors that come into play in the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt. The nature of the parties' relationship is also relevant." *Id.* at 385. In addition, the district court for the Western District of Michigan has stated that the " 'the nature of the parties' relationship' . . . weighs in favor of a finding that a communication was made 'in connection with' the collection of a debt when the only relationship the defendant has with the plaintiff arises out of the plaintiff's defaulted debt."

29

*McDermott v. Randall S. Miller & Assocs., P.C.,* 835 F. Supp. 2d 362, 370 (E.D. Mich. 2011) (quoting *Gburek,* 614 F.3d at 385). Both the *McDermott* and the *Gburek* courts have also explained that courts should consider the "the purpose and context of the communication." *Id.;* *Gburek,* 614 F.3d at 385.

Here, the sole relationship between Plaintiff and Defendant is that of debtor and debt collector, which itself supports the Plaintiff's position that the communications have been "in connection with" the collection of a debt. *Gburek,* 614 F.3d at 385. In addition, the context in which these communications took place suggests the communications were related to the collection of Plaintiff's debt. Defendants filed a lawsuit against Plaintiff seeking recovery for a debt Plaintiff owed Defendants, and obtained a favorable judgment because Plaintiff did not appear in court. After the judgment had been entered, Plaintiff allegedly called Defendants to set up a payment schedule and provided the correct case number for the state court judgment, her social security number, and her last name. Plaintiff was provided a letter stating that no judgment had been entered against her. While it is true that the letter did not request payment, or refer to any amount Plaintiff owed Defendants, the court nevertheless concludes that the letter and phone conversation are "in connection with" the collection of a debt. By allegedly telling the Plaintiff that she did not owe a debt when in fact she did, the communications can reasonably be interpreted as "in connection with" the collection of a debt.

Defendants also move for judgment on the pleadings as to Count Four, which alleges Defendants violated 15 U.S.C. § 1692f when they communicated both orally and in a written letter that no judgment had been entered against Plaintiff. Section 1692f provides that "a debt collector may not use unfair or unconscionable means to collet or attempt to collect any debt."

30

15 U.S.C. § 1692f. To the extent Defendants argue that this count is barred by the *Rooker-Feldman* doctrine, the court refers the parties to the *Rooker-Feldman* discussion above. The Defendants also assert that because section 1692f provides a backstop function for any unfair practices that might "slip by" sections 1692d and 1692e, *Edwards v. McCormick*, 136 F. Supp. 2d 795, 806 (S.D. Ohio 2001), Plaintiffs may not plead that Defendants violated both 1692e and 1692(f).

Of course, parties may plead alternative and even inconsistent claims in their complaint. Fed. R. Civ. P. 8(d). Thus, even if 1692f and 1692e are mutually exclusive, Defendants are not entitled to judgment on the pleadings because Plaintiff is free to plead alternative claims. Plaintiff provides a detailed argument to the court regarding why the same conduct can violate both 1692(f) and 1692(e). The court, however, finds it unnecessary to resolve this legal question at this point in the proceedings because Rule 8(d) disposes of the Defendants' claim.

**2. Motion for Partial Judgment on the Pleadings: Allegations Two and Three of Count Five.**

In Count Five, Plaintiff alleges violations of N.C. Gen. Stat. § 75-54, which provides that "No debt collector shall collect or attempt to collect a debt or obtain information concerning a consumer by any fraudulent, deceptive, or misleading representation." N.C. Gen. Stat. § 75-54. Defendants move for partial judgment on the pleadings only as to the second and third factual allegations of Count Five: (2) "[Defendants caused] an unknown third party to be served with the Complaint and mov[ed] for Summary Judgment against Plaintiff despite this faulty service"; and (3) "[Defendants prevented] Plaintiff from paying the alleged debt in January 2011." Amend. Compl. ¶¶ 90, 93 [DE-12].

31

The court addresses Defendants' arguments as to the second allegation in Count Five first. This allegation relates to the same state court judgment at issue in Counts One, Three, and Four. However, in Count Five, Plaintiff alleges that the fraudulent/misleading practice occurred when Defendants served process on a person Defendants knew was not Plaintiff Amanda R. Johnson, represented to the state court that the correct person had been properly served, and proceeded to successfully move for summary judgment when Plaintiff did not appear in court to defend the suit.

Defendants first argue that this allegation asks the court to review a state court judgment, which is prohibited by the *Rooker-Feldman* doctrine. As discussed, the *Rooker-Feldman* doctrine precludes a federal district court from exercising what amounts to appellate review of state court judgments, and applies in "cases brought by state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Exxon*, 544 U.S. at 284.

Plaintiff counters that she is not asking the court to review or overturn a state court judgment; rather, she alleges that the process by which Defendants obtained the judgment was fraudulent. Plaintiff alleges that Defendants' conduct itself, not the state court judgment, violated NCDCPA. While the court may not review or overturn the state court judgment, the court may review whether Defendants' conduct in obtaining that judgment violated the NCDCPA. *See, e.g., Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 437 (6th Cir. 2006) ("Plaintiff here does not complain of injuries caused by this state court judgment, as the Plaintiffs did in *Rooker* and *Feldman*. Instead, after the state court judgment, Plaintiff filed an independent federal claim that Plaintiff was injured by Defendant when he filed a false affidavit

32

[as part of the state court case]."). As in *Todd*, the Plaintiff here is not complaining of an injury caused by the state court judgment itself, but rather by the process Defendants used to obtain the judgment. The court may inquire into whether Defendants committed fraudulent debt collections practices when they allegedly served process on a person they knew was not Plaintiff, and then moved for summary judgment against Plaintiff when she failed to appear in court. Determining whether Defendants' alleged conduct amounted to a fraudulent practice does not require the court to review or overturn to the state court judgment. Thus, the Defendants are not entitled to judgment on the pleadings based on their *Rooker-Feldman* argument.

Defendants also argue that the second allegation of Count Five—that "[Defendants caused] an unknown third party to be served with the Complaint and mov[ed] for Summary Judgment against Plaintiff despite this faulty service"—is barred by the doctrine of collateral estoppel. Collateral estoppel is appropriate where:

> (1) . . . "the issue sought to be precluded is identical to one previously litigated" ("element one"); (2) . . . the issue was actually determined in the prior proceeding ("element two"); (3) . . . the issue's determination was "a critical and necessary part of the decision in the prior proceeding" ("element three"); (4) . . . the prior judgment is final and valid ("element four"); and (5) . . . the party against whom collateral estoppel is asserted "had a full and fair opportunity to litigate the issue in the previous forum" ("element five").

*Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006) (quoting *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998)).

Defendants construe the second allegation of Count Five as "allegedly defective service of process," which is an issue that the state court would have decided before entering judgment against Plaintiff. Mem. of Law in Supp. of Def.'s Mot. for Partial J. on the Pleadings [DE-39] at

5. Thus, Defendants argue that because the state court has already entered judgment against Plaintiff, the state court has already determined whether service of process was proper.

Plaintiff argues that Defendants have not shown the existence of element one: "that the issue sought to be precluded is identical to the one previously litigated." *Id.* at 217 (internal quotation marks omitted). Plaintiff argues that the state court did not address the allegedly fraudulent process by which Defendants obtained the state court judgment. The court agrees with this argument. Whether Defendants committed fraud or misrepresentation in the process of obtaining a judgment against Plaintiff is a separate issue from whether service was technically proper at the state court level under the North Carolina Rules of Civil Procedure. Plaintiff is not asking the court to review whether service was proper at the state level. Plaintiff is asking whether Defendants committed a fraudulent or deceptive practice when they allegedly served the incorrect person with process and then moved for summary judgment when Plaintiff did not appear in court.

In addition, the court finds that element five is not satisfied: "the party against whom collateral estoppel is asserted [must have] 'had a full and fair opportunity to litigate the issue in the previous forum.' " *Collins*, 468 F.3d at 217 (quoting *Sedlack*, 134 F.3d at 224). As discussed, the court assumes all of Plaintiff's factual are true in reviewing a motion for judgment on the pleadings. *Erickson*, 551 U.S. at 94. Plaintiff asserts that she was never served with process prior to the state court proceeding. Thus, assuming this is true, Plaintiff has not "had a full and fair opportunity to litigate the issue in the previous forum." *Collins*, 468 F.3d at 217 (quoting *Sedlack*, 134 F.3d at 224). Thus, Defendants are not entitled to judgment on the pleadings based on the collateral estoppel argument.

34

Turning to the third allegation of Count Five, Plaintiff alleges that Defendants violated the NCDCPA, section 75-54 by "preventing Plaintiff from paying the alleged debt in January 2011." Amend Compl. [DE-12] ¶ 93. The NCDCPA section 75-54 provides that "[n]o debt collector shall attempt to collect a debt or obtain information concerning a consumer by any fraudulent, deceptive, or misleading representation." N.C. Gen. Stat. § 75-54. Plaintiff alleges that she called Defendant Brock & Scott on January 27, 2011 to set up a payment schedule for the judgment that had been entered against her. In response, Brock & Scott allegedly told Plaintiff that no judgment had been entered against her, and also provided a written letter stating the same. Thus, Plaintiff alleges that Defendants engaged in a "fraudulent, deceptive, or misleading representation" when they told her no judgment had been entered against her and thereby prevented her from paying the debt.

Defendants argue that judgment on the pleadings is appropriate with respect to this allegation because Plaintiff could have paid the judgment to the Wake County Clerk of Superior Court at any time. Defendants contend that it is "logically impossible" for them to have prevented her from paying the judgment because Plaintiff could have paid the judgment to the clerk's office.

The court is not in a position to dismiss this allegation at this stage of the proceedings. A motion for judgment on the pleadings is decided under the same standard as a motion to dismiss: " '[plaintiff must provide] enough facts to state a claim to relief that is plausible on its face.' " *Washi*, 562 F.3d at 616 n.26 (quoting *Twombly*, 550 U.S. at 555). Plaintiff has alleged that Defendants' communications that she did not owe the debt prevented her from paying the debt

35

and thereby rise to the level of a "fraudulent, deceptive or misleading representation." That Plaintiff may have been able to pay the judgment to the Wake County Clerk of Superior Court does not mean that Plaintiff failed to "provided enough facts to state a claim to relief that is plausible on its face."

## CONCLUSION

For the foregoing reasons, the Clerk of Court is DIRECTED to enter a default against Plaintiff in response to Defendants' Notice of Default [DE-14]. The docket entry should read "Entry of Default against Plaintiff on Defendants' Counterclaims." The Clerk of Court is further DIRECTED to treat Plaintiff's Response to Defendant's Notice of Default [DE-18] as a Rule 55(c) motion to set aside entry of default. Plaintiff's Motion to set Aside Entry of Default [DE-18] is ALLOWED. Plaintiff's Motion to Dismiss Defendants' Counterclaim [DE-17, DE-33] is ALLOWED; Defendant's Motion to Disqualify Counsel [DE-30] is DENIED; and Defendants' Motion for Partial Judgment Upon the Pleadings [DE-38] is DENIED. Plaintiff is also ORDERED to file, on or before Friday, October 19, 2012, an Amended Complaint that provides Plaintiff's full legal name but that is otherwise unchanged from DE-12. The parties are both ORDERED to use the Plaintiff's full legal name in all subsequent filings. The Clerk of Court is DIRECTED to refer this matter to United States Magistrate Judge James E. Gates for issuance of a new scheduling order.

SO ORDERED.

This the 26 day of September, 2012.

James E. Fox

36

James C. Fox

Senior United States District Judge