UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-474-F

| | |
|---|---|
| AMANDA RENEE JOHNSON, )<br>　　　　Plaintiff, )<br>　　　　　　　　　　　　　　　　)<br>v.　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　)<br>BROCK & SCOTT, PLLC, )<br>CHANNEL GROUP, LLC, AND )<br>COMPREHENSIVE LEGAL )<br>SOLUTIONS, INC., )<br>　　　　Defendants. ) | O R D E R |

This matter is before the court on the Plaintiff's Motion for Summary Judgment [DE-57]. The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the motion is DENIED.

## I. PROCEDURAL AND FACTUAL HISTORY[1]

Plaintiff Renee Johnson filed a complaint against Defendants in this court on September 9, 2011, alleging claims for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the North Carolina Debt Collection Practices Act ("NCDCPA"), N.C. Gen. Stat. § 75-50 *et seq.* Defendants Channel Group, Comprehensive Legal Solutions ("CLS") and Brock & Scott Law Firm are interrelated entities owned by Mr. Brock and Mr. Scott. Channel Group and CLS are debt-buying companies, engaged in the business of buying defaulted

---

[1] The court relates the facts in the light most favorable to the non-moving party. The facts in this case are largely undisputed.

obligations from banks or other lenders for substantially less than the amount of the original loan. Channel Group and CLS do not engage in direct debt collection efforts. Instead, the Brock & Scott Law Firm collects on the defaulted obligations on behalf of Channel Group and CLS. Debtors who call Channel Group or CLS requesting information about their accounts are transferred to Brock & Scott employees.

Plaintiff initially owed the credit card debt in this case to Chase Bank. Although the record is not entirely clear, it appears Plaintiff owed approximately $4,000 to Chase Bank when she defaulted. Mot. for Summ. J. [DE-57] at 5. After Plaintiff defaulted, Chase sold the obligation to Channel Group on an unspecified date. Channel Group assigned an interest rate of 26.74% to the account. Channel Group's Rule 30(b)(6) representative testified that Channel Group generally assigns the interest rate based on the rate agreed to in the original credit contract. However he was unsure if Channel Group received the original contract or credit card application from Chase Bank in this particular case. Woods Dep. 26:15-18; 43:20-44:8. In discovery, Channel Group turned over some account statements and other documents associated with the original Chase account, but those documents did not include the original contract and they identified an interest rate of 14.99% or 29.24%. Channel Group's 30(b)(6) representative was not able to recall exactly how the 26.74% interest rate was assigned to Plaintiff's account. When Channel Group transferred Plaintiff's account to CLS, the 26.74% interest rate was retained. Despite requests from the Plaintiff, none of the Defendants were able to produce the original credit card application or the cardholder contract relating to the Plaintiff's credit account with Chase Bank.

Channel Group first placed Plaintiff's account with Brock & Scott on August 20, 2009, and Brock & Scott immediately ran a credit background check on Plaintiff. The credit report Brock & Scott received included Plaintiff's full legal name and her correct social security number. On September 1, 2009, Defendants Brock & Scott, on behalf of the Channel Group, filed a lawsuit in North Carolina state court regarding Plaintiff's defaulted obligation, with an assigned docket number of 2009-CVD-017475. Although the parties dispute whether Plaintiff was properly served with notice of the suit, Plaintiff notes in the amended complaint that Judgment was entered against her in the state court case in the amount of $4,610.70. Amend. Compl. [DE-12] ¶¶ 38-41.

On September 11, 2009, Plaintiff called Brock & Scott to arrange a payment on her account. Brock & Scott accepted the $25.00 payment, but charged an $0.88 processing fee. This payment was credited to the court costs associated with the state court lawsuit, in accordance with Brock & Scott policy. On October 23, 2009, Channel Group assigned the account to CLS.

Plaintiff first learned of the judgment against her when she obtained her credit report on January 5, 2011. At that time, Plaintiff attempted to call Defendant Channel Group to arrange payments but Channel Group instructed her to contact Brock & Scott. Plaintiff called Brock & Scott on January 27, 2011 and although Plaintiff provided her full name, the state court case number and her social security number, Brock & Scott incorrectly informed her that no state court judgment had been entered against her. Brock & Scott further advised Plaintiff (erroneously) that she did not owe a debt to any of the Defendants and that the credit report entry was possibly a mistake. Plaintiff specifically advised Brock & Scott that her full legal name was "Amanda Renee Johnson" but that she often "goes by" Renee. January 27, 2013 Recorded

3

Phone Conversation. In addition, Defendant Brock & Scott sent a letter on behalf of itself and Defendant Channel Group dated January 27, 2011, which stated in relevant part "[o]ur records indicate that we do not have a Judgment filed for Amanda R. Johnson, last 4 of SSN# [redacted] for our client with Docket # 2009-CVD-01-7475. January 27, 2011 Letter [DE-57-2]; Amend. Compl. [DE-12, -46] ¶ 47.

Plaintiff provided the letter from Brock & Scott to the three major credit bureaus, and the credit bureaus temporarily removed the entry from her credit report. On or about February 27, 2011, Plaintiff discovered that the credit entry had been "verified" and that the credit bureaus had reentered the unpaid debt entry on her credit report. Plaintiff then obtained counsel. On April 6, 2011, Brock & Scott allegedly sent an email to the Plaintiff's attorney offering to "clear the judgment" from Plaintiff's credit report in exchange for a "suitable settlement."

Based on the foregoing, Plaintiff filed her complaint alleging unfair and deceptive collection practices on the part of Defendants. Defendants' counterclaims for declaratory judgment and attorneys' fees were dismissed by order dated September 27, 2012 [DE-45]. Plaintiff now moves for summary judgment on all claims.

## II. ANALYSIS

### A. Standard of Review

At summary judgment, the court must examine the evidence presented by both parties and determine if there is a need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Yarborough v. Montgomery*, 554 F. Supp. 2d 611, 614 (D.S.C. 2008). The court examines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986). Where the moving party shows that the evidence is so one-sided that it should prevail as a matter of law, the burden shifts to the non-moving party to come forward with affidavits, depositions, answers to interrogatories, or other evidence demonstrating that there is a genuine issue of material fact that requires trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986); *Matsushita*, 475 U.S. at 587; *Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir. 1996). An issue of fact is genuine if a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 248. A fact is material if proof of the fact might affect the outcome of the case under the substantive law. *Id.* The facts should be viewed in the light most favorable to the non-moving party, and all reasonable inferences should be made in favor of the non-moving party. *Id.* at 255; *Smith v. Va. Commonwealth Univ.*, 84 F.3d 672, 675 (4th Cir. 1996).

## B. Fair Debt Collections Practices Act

Congress established the FDCPA to "eliminate abusive debt collection practices." 15 U.S.C. § 1692. Specifically, the FDCPA prohibits, *inter alia*, the use of any conduct the natural consequence of which is to harass, oppress, or abuse any person, 15 U.S.C. § 1692d, any false, deceptive or misleading representations or means, 15 U.S.C. § 1692e, and any unfair or unconscionable means, 15 U.S.C. § 1692f, to collect or attempt to collect any debt, and requires a debt collector to provide a validation notice, 15 U.S.C. § 1692g. The FDCPA creates a private cause of action against debt collectors who violate its provisions. *See* 15 U.S.C. § 1692k.

To prevail on a FDCPA claim, a plaintiff must sufficiently demonstrate that (1) he was the object of collection activity arising from a consumer debt as defined by the FDCPA, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant engaged in an act or

omission prohibited by the FDCPA. *Johnson v. BAC Home Loans Servicing, LP*, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011) (citing *Dikun v. Streich*, 369 F. Supp. 2d 781, 784-85 (E.D. Va. 2005)). The standard of review for evaluating deceptiveness under the FDCPA is that of the "least sophisticated debtor." *Chaudhry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999). Finally, it is well settled that the FDCPA is a strict liability statute and a Plaintiff need not prove intentional conduct to prevail on an FDCPA claim. *Warren v Sessoms & Rogers, P.A.*, 676 F.3d 365, 375 (4th Cir. 2012); *Reichert v. Nat'l Credit Sys. Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008).

In this case, Defendants do not contest that they qualify as "debt collectors" within the meaning of the Act or that Plaintiff owed a "consumer debt." Therefore, with respect to the Plaintiff's FDCPA claims, the sole issue is whether the Defendants engaged in an act or omission prohibited by the FDCPA. Plaintiff alleges four separate acts that violated various provisions of the FDCPA. However, for purposes of analysis, the court will divide the alleged violations into two categories: (1) Defendants provided false representations of the character and amount of a debt by informing Plaintiff that she did not owe a debt to Defendants and sending a letter stating the same, in violation of § 1692e(2)(A), e(8), and e(10); and (2) three separate violations of § 1692(f) for charging a processing fee and interest rate that were not provided for in the original credit card contract.

## C. False Representation Claims (counts one through three)

Section 1692e begins with the general rule: "[a] debt collector may not use any false, deceptive, or misleading representation . . . in connection with the collection of any debt." *Id.* A non-exclusive list of examples of "false, deceptive, or misleading representation[s]" follows, which includes: (1) "[t]he false representation of—the character, amount, or legal status of any

6

debt[,]" § 1692e(2)(A); (2) "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed[,]" § 1692e(8); and (3) "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer[,]" § 1692e(10).

Mindful that "we begin with the understanding that Congress says in a statute what it means and means in a statute what it says there," *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6 (2000) (internal quotations omitted) and "[if] the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms[,]" *id.*, the court begins by applying the statutory language to the facts of this case. Accordingly, the most logical starting point is the introductory language "in connection with the collection of any debt." § 1692e. If these communications were not "in connection with the collection of [a] debt," then § 1692e does not apply to these communications and all of Plaintiff's § 1692e claims must be dismissed.

As a threshold matter, the court has already found that the communications in this case were "in connection with the collection of [a] debt." By its September 27, 2012 Order [DE-45], at 30, *available at* 2012 WL 4483916, the court found as follows:

> Here, the sole relationship between Plaintiff and Defendant is that of debtor and debt collector, which itself supports the Plaintiff's position that the communications have been "in connection with" the collection of a debt. In addition, the context in which these communications took place suggests the communications were related to the collection of Plaintiff's debt. Defendants filed a lawsuit against Plaintiff seeking recovery for a debt Plaintiff owed Defendants, and obtained a favorable judgment because Plaintiff did not appear in court. After the judgment had been entered, Plaintiff allegedly called Defendants to set up a payment schedule and provided the correct case number for the state court judgment, her social security number, and her last name. Plaintiff was provided a letter stating that no judgment had been entered

7

> against her. While it is true that the letter did not request payment, or refer to any amount Plaintiff owed Defendants, the court nevertheless concludes that the letter and phone conversation are "in connection with" the collection of a debt. By allegedly telling the Plaintiff that she did not owe a debt when in fact she did, the communications can reasonably be interpreted as "in connection with" the collection of a debt.

*Id.* (citations omitted). As Plaintiff points out, this is the "law of the case." The "law of the case" doctrine holds that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009). A district court can deviate from the law of the case doctrine in three "limited circumstances": (1) a subsequent proceeding reveals substantially different evidence, (2) controlling authority subsequently made a contrary decision, or (3) the prior decision was clearly erroneous and would work a manifest injustice. *U.S. v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999).

Under the particular facts and circumstances of this case, the court finds that its prior ruling was "clearly erroneous" and, absent reversal of the prior ruling, would work a manifest injustice. As the Sixth Circuit pointed out in *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169 (6th Cir. 2011), "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *Id.* at 173. This interpretation of "in connection with the collection of [a] debt" is more consistent with the statutory language than the court's prior ruling and the court is convinced it committed error when it failed to consider the purpose of the communications between Plaintiff and Defendant in this case.

In its prior ruling, the court relied on the context of the communication and the fact that the sole relationship between the parties was that of debtor and debt collector. September 27,

8

2013 Order [DE-45] at 30. While these factors should be considered by the court when determining whether a communication is "in connection with the collection of [a] debt," *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384-86 (7th Cir. 2010), the court should not have used the factors in a way that overcomes the plain meaning of the statutory language "collection of a debt." *Hartford Underwriters*, 530 U.S. at 6 ("[If] the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms." (internal quotations omitted)). The court agrees that the plain meaning of "in connection with the collection of [a] debt" does not require that the communication contain an outright demand for payment. *Gburek*, 614 F.3d at 384. However, the language "collection of a debt" is part of the statute and its meaning must be given effect. As the *Grden* court held, the court can enforce the phrase by requiring a showing that the overall purpose of the communication is to induce payment by the debtor, even if no outright demand for payment is made. *Grden*, 643 F.3d at 173.

In this case, the communications were not intended to induce payment by the debtor. Plaintiff called Defendant Brock & Scott and inquired about arranging a payment schedule. In response to her inquiry, Brock & Scott erroneously informed her that she did not owe the debt and sent a letter stating the same. Nothing about either of these communications suggests their purpose was to induce payment by the debtor. *See Grden*, 643 F.3d at 173 (holding that a "ministerial response to a debtor inquiry" is not "in connection with the collection of [a] debt" because the "animating purpose" of the debt collector's response was not to collect a debt). Because the court failed to consider the purpose of the communications between Plaintiff and Defendant in its prior ruling, the court finds that the prior ruling was clearly erroneous.

9

The court also finds that the prior ruling would work a manifest injustice if allowed to stand. Assuming that the court holds (consistent with its prior ruling) that this communication is "in connection with the collection of [a] debt," the Plaintiff will likely prevail at summary judgment on her § 1692e claims. The FDCPA does not require a finding that the Defendants intentionally violated the act, *Warren*, 676 F.3d at 375, and Defendants obviously communicated a false statement about the character and amount of a debt, in violation of § 1692e(2). As Plaintiff points out, Defendants have also utterly failed to meet their burden on the bona fide error defense. Pl.'s Reply Brief [DE-61] at 3-6. If the court does not revisit its prior ruling, the court will be constrained to find that Defendants violated the FDCPA, and, as the court has explained, such a finding would be contrary to the statutory language. Whatever the precise definition of "manifest injustice" may be, the court is confident that this scenario would qualify.

Accordingly, the court finds, as a matter of law, that the communications in this case do not violate § 1692e because they were not "in connection with the collection of [a] debt." Plaintiff's motion for summary judgment as to counts one, two and three is therefore DENIED and those counts are hereby DISMISSED.

### D. Claim based on Interest Rate and Surcharge (count four)

Count four alleges a violation of section 1692(f), which provides that a debt collector "may not use unfair or unconscionable means to collect or attempt to collect any debt" and goes on to provide a non-exclusive list of examples of prohibited conduct. 15 U.S.C. § 1692f. Subsection f(1) prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." § 1692f(1).

10

The factual allegations supporting count four in the amended complaint do not refer to the interest rate or surcharge Defendants imposed. Instead, in support of count four, the amended complaint's factual allegations refer to the January 27, 2011 phone call and the accompanying letter that erroneously informed Plaintiff she did not owe the debt. The amended complaint cites to § 1692(f), but does not specifically reference subsection f(1) and none of the factual allegations address the interest rate or the surcharge assigned by Defendants.

However, during discovery, Plaintiff's learned of the (allegedly) illegal interest rate and the surcharge. Defendants first learned that Plaintiffs were pursing the § 1692f violation on the basis of the interest rate and surcharge arguments in Defendants motion for summary judgment. Def.'s Br. in Opp'n to Pl.'s Mot for Summ. J. [DE-58] at 8. Defendants argue that Plaintiff may not completely change the factual allegations alleged in the complaint in support of count four at this stage of the proceedings. This argument is convincing.

One of the basic functions of Rule 8 of the Federal Rules of Civil Procedure is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the statement of the claim must contain "'[f]actual allegations [that] raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 570 (2007)).

11

In this case, Defendants had no notice of the factual allegations underpinning Plaintiff's § 1692f claim until Plaintiff filed her motion for summary judgment. The court does not agree that Plaintiff's discovery requests or questions regarding the interest rate/surcharge during depositions sufficiently placed Defendants on notice that Plaintiff intended to pursue its § 1692f(1) claims on the basis of the interest rate/surcharge. This is especially so where the amended complaint alleges the claim on the basis of false representations regarding the status of the debt. In the absence of a motion to amend the complaint, Defendants were entitled to rely on the operative complaint as fair notice of the general factual allegations forming the basis of Plaintiff's claims. *See Pickern v. Pier 1 Imports (U.S.) Inc.*, 457 F.3d 963, 969 (9th Cir. 2006) (affirming dismissal of claim on grounds of failure to provide notice in accordance with Rule 8 where "the complaint gave the Appellees no notice of the specific factual allegations presented for the first time in [the plaintiff's] opposition to summary judgment.").

Perhaps anticipating that the court would be sympathetic to Defendants' argument, Plaintiff alternatively moves for leave to amend the pleading. Under the circumstances, leave to amend is governed by both Rules 15(a) and 16(b) of the Federal Rules of Civil Procedure. *Stonecrest Partners, LLC v. Bank of Hampton Roads*, 770 F. Supp. 2d 778, 784 (2011). Under Rule 15(a), leave to amend should be "freely given" unless the amendment would be prejudicial to the nonmoving party, there is evidence of bad faith, or the amendment would be futile. *Id.* at 783-84 (citing *Laber v. Harvey*, 438 F.3d 404, 425 (4th Cir. 2006) (en banc)).

The court finds that Defendants would be prejudiced by allowing amendment at this stage. Had Plaintiff requested leave to amend when it first learned of the factual underpinnings of its § 1692f(1) claim, Defendants would have received notice of the claim and would have had

12

an opportunity to structure its discovery requests around defending that claim. Instead, Plaintiff waited until she filed her motion for summary judgment to give any notice she was pursuing a claim based on the interest rate/surcharge. Under these circumstances, Plaintiff's request for leave to amend the pleading is DENIED.

Plaintiff apparently assumed she could advanced entirely new and different factual allegations in support of count four. As such, she advances no argument in her summary judgment brief regarding how the erroneous representations regarding the status of Plaintiff's debt constitute a violation of § 1692f. At any rate, the false representations regarding the status of Plaintiff's debt were not "means to collect or attempt to collect [a] debt" because Defendants did not attempt to collect the debt during the communications. *See* § 1692f (prohibiting a debt collector from "us[ing] unfair or unconscionable means *to collect or attempt to collect any debt.*" (emphasis added)). As discussed above, Plaintiff failed to provide notice to Defendants of her § 1692f(1) claims regarding the interest rate and surcharge until her motion for summary judgment, in contradiction of Rule 8 of the Federal Rules of Civil Procedure. Accordingly, Plaintiff's motion for summary judgment as to count four is DENIED and count four is hereby DISMISSED.

### E. State Law Claims (counts 5 and 6)

Counts five and six allege violations of the North Carolina Debt Collection Act (NCDCPA), N.C. Gen. Stat. § 75-50 *et seq*. Specifically, counts five and six allege violations of § 75-54, which provides "[n]o debt collector shall collect or attempt to collect a debt or obtain information concerning a consumer by any fraudulent, deceptive or misleading representation." *Id.* Similar to the FDCPA, a non-exclusive list of examples of prohibited conduct follows,

including "[f]alsely representing the character, extent, or amount of a debt against a consumer or of its status in any legal proceeding . . . ." § 75-54(4). The NCDCPA is "patterned after the FDCPA." *McWhirter v. Telecheck Servs., Inc.*, No. CA-99-216-MU, 1999 WL 33261239, at *5 (W.D.N.C. Dec. 1, 1999).

Plaintiff contends that "[f]or the same reasons that Defendants violated section 1692e . . . Defendants violated the NCDCPA at § 75-54." The court does not agree. While § 75-54 may be "patterned after" the FDCPA, the statutory language is not identical. Significantly, the North Carolina version omits the language "in connection with the collection of [a] debt . . . ." *Compare* 15 U.S.C. § 1692e *with* N.C. Gen. Stat. § 75-54. Instead, the North Carolina statute begins with the phrase "[n]o debt collector shall collect or attempt to collect a debt . . . by any fraudulent, deceptive or misleading representation." § 75-54. Thus, the North Carolina statute contemplates a debt collector "collect[ing] or attempt[ing] to collect" a debt by fraudulent or deceptive means. This language is more narrow than § 1692e of the FDCPA and, in the court's view, does not cover the facts of this case.

The misleading representation in this case involves a phone call and letter sent to the Plaintiff, in which Defendants erroneously informed Plaintiff that she did not owe a debt. Defendants' conduct cannot reasonably be described as an attempt to collect a debt, directly or indirectly. Plaintiff's motion for summary judgment is therefore DENIED and count five is hereby DISMISSED.

As to count six, Plaintiff again raises the issue of the interest rate and surcharge for the first time in her motion for summary judgment. For the reasons stated in section II.D above,

14

Plaintiff's motion for summary judgment as to count six is DENIED and count six is hereby DISMISSED.

### III. CONCLUSION

Plaintiff's motion for summary judgment [DE-57] is DENIED. Furthermore, the court finds as a matter of law that the communications at issue in this case did not violate the FDCPA or the NCDCPA. Thus, counts one, two, three, and five are hereby DISMISSED WITH PREJUDICE. Counts four and six are DISMISSED WITH PREJUDICE for failure to provide notice of the claims in accordance with Rule 8 of the Federal Rules of Civil Procedure. The Clerk of Court is DIRECTED to close this case.

SO ORDERED.

This the 15th day of November, 2013.

JAMES C. FOX
Senior United States District Judge